ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| HERBERT JAFET LUGO RODRÍGUEZ, RUTH ESTHER GÓMEZ ARIAS Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS<br><br>Apelados<br><br>v.<br><br>MANSIÓN DEL SOL HOMEOWNERS ASSOCIATION, INC.<br><br>Apelante | KLAN202401072 | *Apelación* procedente del Tribunal de Primera Instancia Sala de Bayamón<br><br>Caso Núm. BY2023CV05367<br><br>Materia: Sentencia Declaratoria<br><br>Asunto: Apelación de Sentencia Sumaria declarando con lugar causa de acción por Sentencia Declaratoria |

Panel integrado por su presidenta, la Jueza Álvarez Esnard, la Jueza Prats Palerm y el Juez Sánchez Báez[1]

Sánchez Báez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de junio de 2026.

Compareció Mansión del Sol Homeowners Association, Inc. (en adelante, "Asociación" o "parte demandada-apelante") mediante recurso de *Apelación* presentado el 2 de diciembre de 2024. Nos solicita que revoquemos la *Sentencia Sumaria* que emitió el Tribunal de Primera Instancia, Sala de Bayamón, el 21 de octubre de 2024. En el referido dictamen, el Foro Primario declaró *Ha Lugar* la *Moción de Sentencia Sumaria* presentada por Herbert J. Lugo Rodríguez, Ruth E. Gómez Arias y la Sociedad Legal de Gananciales compuesta por ambos (en adelante, "parte demandante-apelada").

---

[1] Mediante la Orden Administrativa OATA-2025-002, emitida el 9 de enero de 2025, se designó al Juez Isaías Sánchez Báez en sustitución de la Hon. Maritere Brignoni Mártir.

Por los fundamentos que esbozamos a continuación, se **modifica** en parte la *Sentencia Sumaria* y, así modificada, se **confirma** el dictamen apelado.

**-I-**

El caso de epígrafe tuvo su génesis el 26 de septiembre de 2023, cuando el señor Lugo Rodríguez, la señora Gómez Arias y la Sociedad Legal de Gananciales compuesta por ambos, presentaron la *Demanda* de epígrafe en contra de Mansión del Sol Homeowners Association, Inc.[2] En síntesis, alegaron que adquirieron su residencia en la Urbanización Mansión del Sol en el año 2000 y que, desde entonces, estacionaron dentro de su propiedad dos vehículos comerciales tipo "step-van" utilizados en su negocio de venta de herramientas. Sostuvieron que, durante más de veintitrés (23) años, la parte demandada-apelante no objetó dicha práctica ni les requirió el cumplimiento de las restricciones voluntarias que posteriormente pretendió hacer valer. No obstante, alegaron que, en el año 2023, la parte demandada-apelante les requirió remover los referidos vehículos por entender que su estacionamiento infringía las restricciones voluntarias aplicables a la urbanización. A tenor con ello, plantearon que cualquier restricción relacionada con el estacionamiento de dichos vehículos había quedado extinguida por renuncia o abandono. Por lo anterior, solicitaron que el Tribunal de Primera Instancia dictara sentencia declaratoria y determinara que las referidas restricciones voluntarias no les eran oponibles en cuanto al estacionamiento de los vehículos en cuestión.

Luego, el 29 de noviembre de 2023, la Asociación instó una *Contestación a Demanda y Reconvención.*[3] En esta, negó las alegaciones formuladas en su contra y sostuvo que la Urbanización Mansión del Sol estaba gravada por unas restricciones voluntarias constituidas mediante la Escritura Núm. 366 titulada *Deed of Declaration of Covenants and*

---

[2] Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (en adelante, "SUMAC-TPI"), Entrada Núm. 1, págs. 1-6.
[3] SUMAC-TPI, Entrada Núm. 8, págs. 1-11.

*Restrictions for Mansion del Sol.*[4] Alegó que dichas restricciones voluntarias limitaban el uso de los lotes a fines estrictamente residenciales, prohibían la utilización de las unidades para propósitos comerciales y disponían que los vehículos comerciales solo podían estacionarse dentro de los garajes de los residentes. Asimismo, sostuvo que los demandantes estacionaban vehículos comerciales identificados con el nombre "Snap-On Tools" y admitió que estos habían mantenido vehículos tipo step-van en el lote objeto de controversia.

En cuanto a la *Reconvención,* la parte demandada-apelante alegó que las restricciones voluntarias que gravaban la urbanización eran válidas, razonables y exigibles a todos los titulares, y que la parte demandante-apelada las había infringido al utilizar su residencia para actividades comerciales y estacionar vehículos comerciales en el lote y en las calles de la urbanización. Sostuvo que tales actuaciones afectaban el carácter residencial de la comunidad y contravenían las restricciones voluntarias impuestas por el urbanizador. Por ello, solicitó la expedición de los remedios interdictales correspondientes, la remoción de los vehículos comerciales y que se declarara que las actuaciones de los demandantes-reconvenidos infringían las restricciones voluntarias aplicables a la urbanización.

Posteriormente, el 15 de diciembre de 2023, la parte demandante-apelada presentó una *Réplica a Reconvención.*[5] En síntesis, negó que la parte demandada-apelante estuviera facultada para exigir el cumplimiento de las restricciones voluntarias invocadas y sostuvo que las defensas en equidad impedían su aplicación en su contra. Alegaron que los vehículos objeto de controversia permanecían estacionados dentro de su propiedad y que no operaban negocio alguno desde la residencia. Asimismo, plantearon que la corporación originalmente autorizada para velar por el cumplimiento

---

[4] *Íd.*, Anejo 1.
[5] SUMAC-TPI, Entrada Núm. 10, págs. 1-7.

de las restricciones voluntarias ya no existía, que la parte demandada-apelante carecía de legitimación para hacerlas valer y que esta había renunciado o abandonado dichas restricciones tras haber permitido por años el estacionamiento de los referidos vehículos. Además, sostuvieron que la aplicación de las restricciones era arbitraria y selectiva. Por ello, solicitaron que se declarara con lugar la sentencia declaratoria interesada en la Demanda y que se decretara que la parte demandada-apelante estaba impedida de hacer cumplir las restricciones voluntarias en su contra.

Luego de varias incidencias procesales, el 29 de julio de 2024, la parte demandante-apelada presentó una *Moción de Sentencia Sumaria*.[6] En suma, planteó que no existía controversia real sobre hechos materiales y que procedía dictar sentencia a su favor. Entre otros fundamentos, alegó que las gestiones relacionadas con la franquicia "*Snap-on Tools*" se realizaban de manera ambulante, por lo que su residencia nunca fue utilizada como centro de operaciones ni para desarrollar actividad comercial alguna en contravención a las restricciones voluntarias. Asimismo, sostuvo que, previo a adquirir la propiedad, verificó junto con la vendedora del proyecto residencial que el lote contara con espacio suficiente para estacionar los dos (2) vehículos comerciales, circunstancia que afirmó fue determinante para concretar la compraventa. Añadió que, una vez adquirida la propiedad, la Asociación permitió durante más de veintitrés (23) años que dichos vehículos permanecieran estacionados en el lugar, sin requerir su remoción ni realizar gestión alguna para exigir el cumplimiento de las restricciones voluntarias. Incluso, señaló que esa conducta trascendió la mera inacción, pues, con motivo de las obras de remodelación del acceso a la urbanización, representantes de la parte demandada-apelante tomaron las medidas de los vehículos con el propósito de garantizar que estos pudieran continuar entrando y saliendo de la urbanización una vez concluidos los trabajos. A la luz de lo anterior,

---

[6] SUMAC-TPI, Entrada Núm. 58, págs. 1-28.

argumentó que la Asociación había renunciado a exigir el cumplimiento de las restricciones voluntarias invocadas. En consecuencia, solicitó que mediante sentencia sumaria, se declarara que las restricciones voluntarias habían quedado modificadas y/o habían dejado de ser exigibles respecto a su propiedad y se desestimara la *Reconvención* presentada en su contra.

Por su parte, el 1 de agosto de 2024, la parte demandada-apelante instó su propia *Moción de Sentencia Sumaria*.[7] En esta, contrario a lo argüido por la parte demandante-apelada, sostuvo que las restricciones voluntarias eran válidas y exigibles, por lo que el estacionamiento de los dos (2) camiones comerciales en el lote residencial infringía dichas restricciones voluntarias. Añadió que la inacción de la Asociación durante años no constituyó una renuncia a exigir el cumplimiento de dichas restricciones y que la causal de abandono estaba íntimamente ligada a la existencia de cambios radicales en el vecindario, los cuales, a su juicio, no estuvieron presentes en el caso de autos. Además, afirmó que la parte demandante-apelada utilizaba la propiedad para fines comerciales, toda vez que el Registro de Comerciante, el Permiso Único y demás documentación relacionada con la operación de la franquicia identificaban la residencia como la dirección del negocio, lo que, según sostuvo, evidenciaba un uso incompatible con el carácter estrictamente residencial del inmueble. A tenor con sus planteamientos, solicitó que se dictara sentencia sumaria a su favor, se desestimara la *Demanda* de epígrafe, se declarara con lugar la Reconvención y se concedieran los remedios allí solicitados.

Así las cosas, y luego de que las partes presentaran las correspondientes oposiciones a sus respectivas mociones de sentencia sumaria, el 21 de octubre de 2024, el Tribunal de Primera Instancia emitió la *Sentencia Sumaria* apelada. En esta, concluyó que no existía controversia

---

[7] *Íd.*, Entrada Núm. 64, págs. 1-22.

real sobre hechos materiales y esenciales y consignó como incontrovertidas las siguientes determinaciones de hecho:

15. Los demandantes Herber[t] Jafet Lugo Rodríguez, su esposa Ruth Esther Gómez Arias y la sociedad legal de gananciales compuesta por ambos, han residido en la urbanización Mansión del Sol, calle Vía Arcoíris MS49 desde febrero del año 2000.

16. La Urbanización Mansión del Sol en Toa Baja, en adelante la urbanización, es un desarrollo residencial construido por "Levitt Homes Builder Corporation", en adelante el desarrollador, para finales de la década de 1990 e incorporada como Asociación de Residentes Mansión del Sol Homeowners Association Inc, en adelante la Asociación.

17. La urbanización Mansión del Sol consta gravada al folio 15 del tomo 491 de la Sección II Registro de la Propiedad de Bayamón a condiciones restrictivas establecidas bajo la escritura 366 del 17 de octubre de 1997, otorgada en Guaynabo, ante la notaria Estela I. Vallés Acosta, titulada Deed of Declaration of Covenants and Restrictions for Mansión del Sol.

18. El artículo VII, sección 2 de la escritura lee:

Section 2. Specific Restrictions. The Specific restrictions which shall apply to the lots referred to in Section 1, above, are the following:

One. Structure and Uses: The lots shall be used only for residential purposes. Only structures which serve for housing a single family, which do not exceed two (2) stories, and which have a carport or private garage with capacity for a maximum of three (3) automobiles may be constructed on the lots. No living unit or part thereof shall be utilized for commercial purposes, irrespective of the nature of such commercial purposes. Only operational motor vehicles for personal use or operational family type motor vehicles used in the employment of work of the residents of the Living Units having valid and effective registration licenses may be parked, maintained, or cleaned in the garages or lots. Trucks, trailers campers and boats may not be parked in the lots or streets of Mansion del Sol; they may only be parked inside the residents' garages. No offensive and bothersome activities or activities causing other residents inconveniences may be conducted on the Lots or in the Living Units. No trailers, tents shacks, or structures of similar nature may be installed, constructed, or located temporarily or permanently on the lots."

19. La propiedad de los demandantes forma parte del redondel ubicado al final de la calle sin salida denominada como Vía Arcoíris, la cual colinda con el muro que separa el proyecto de la Carretera P.R. 867, la cual para febrero de 2023 estaba pintada de color azul claro y contaba con una verja en su lado izquierdo en la colindancia con la MS50.

20. Por su localidad los demandantes solamente cuentan con vecinos de la urbanización Mansión del Sol en ambos laterales, ya que el vecino del fondo forma parte de otro complejo de viviendas.

21. Desde abril de 1992, el demandante Herber[t] Jafet Lugo Rodríguez es dueño de una franquicia dedicada de manera exclusiva a la venta y entrega de las herramientas fabricadas por la compañía "Snap-on Tools" en los pueblos de Bayamón, Cataño, Toa Baja y Toa Alta.

22. Los demandantes han utilizado para realizar su operación comercial de uno a dos vehículos de motor conocidos en la industria como "step vans", los cuales sirven como tienda ambulante para la venta y entrega de herramientas para mecánicos.

23. El negocio de "Snap-On" Tools está estructurado para visitar a los clientes semanalmente con un camión diseñado para la venta exclusivamente de herramientas automotrices. La mercancía para dichas ventas se recoge en los centros de distribución de la compañía UPS y Magic Transport, por lo que en la propiedad de los demandantes no se recibe, carga o descarga mercancía alguna relacionada con su negocio.

24. Toda gestión comercial relacionada con la franquicia del negocio del demandante se lleva a cabo de manera ambulante, por lo que no se requiere, ni se utiliza la residencia de los demandantes como centro de operaciones.

25. El 11 de febrero de 2020, el demandante organizó y registró en el Departamento de Estado la compañía de responsabilidad limitada Tools Mec Sales, LLC.

26. El propósito de dicha compañía es: "Venta de Herramientas y Equipo Especializado para el Mantenimiento de Autos y Maquinaria, entre otros".

27. La dirección provista para dicha corporación es en Mansión del Sol, Ms 49 Vía Arcoíris, Toa Baja, PR, 00952.

28. El 1ro de octubre de 2023, Tool Mec Sales obtuvo un Registro de Comerciante número 1072705-0014, de "negocio ambulante" bajo el cual se identifica como su dirección Mansión del Sol, Ms 49 Vía Arcoíris, Toa Baja, PR, 00952.

29. La compañía Tool Mec Sales obtuvo un Permiso Único número 2024-546881- PU316641 expedido por la Oficina de Gerencia de Permisos (OGPe) el 20 de febrero de 2024, el cual identifica la dirección de la oficina administrativa" Mansión del Sol, Ms 49 Vía Arcoíris, Toa Baja, PR, 00952.

30. En dicho Permiso Único se autoriza la operación de una oficina administrativa e identifica el Tipo de Uso como Comercial- Oficina de Bajo Volumen-Oficina Administrativa.

31. El mismo Permiso Único indica que esa operación comercial incluye dos (2) estacionamientos.

32. Para enero del año 2000 la franquicia del demandante ya contaba con dos camiones rotulados con el logo de la compañía, los que para esa época había uno en el 1992 y el segundo en el 1999.

33. Actualmente el demandante posee dos camiones del año 2018 y 2020.

34. La franquicia del demandante opera de lunes a viernes, desde las 7:00 a.m., en adelante, cuando salen los camiones a cumplir sus rutas; y al concluir las mismas regresan y se estacionan dentro de la propiedad del demandante hasta el próximo día laborable.

35. Que este trámite fue factor determinante para que los demandantes continuaran con el proceso de compra de la propiedad.

36. Una vez adquirida la propiedad, los demandantes procedieron a construir un "driveway" para estacionar los camiones.

37. Que los demandantes desde que compraron la propiedad y se mudaron a la urbanización Mansión del Sol, calle Vía Arcoíris MS49 en enero del año 2000 hasta el presente, han estacionado sus vehículos de trabajo denominados "Snap-on" en el "driveway".

38. El Sr. Eric Rossner desde el año 2000 reside en la Vía Arcoíris MS-53 de la urbanización Mansión del Sol, esto es, a cuatro casas de los demandantes.

39. Que desde el año 2003 al presente el Sr. Rossner fungió como Presidente, Vicepresidente, Vocal de la Junta de Directores de la Mansión del Sol Homeowners Association, Inc., y actualmente forma parte de dicha junta como Asesor en Asuntos Regulatorios y Legales.

40. El Sr. Eric Rossner por ser vecino de la misma calle de los demandantes desde alrededor del año 2000 y como presidente y miembro de la Junta de Directores de la Mansión del Sol Homeowners Association, siempre ha tenido conocimiento de la existencia de la existencia de los vehículos de trabajo de los demandantes; que los han estacionado dentro de los predios de su propiedad y que desde allí les han dado limpieza.

41. El 16 de abril de 2013, el Departamento de Estado canceló el certificado de incorporación de Mansión del Sol Homeowners Association, Inc., registro número, 31007, debido a que dicha corporación no rindió los informes anuales, requeridos por ley, para los años 2008, 2009, 2010, 2011 y 2012.

42. Para los años que se incumplió con dicha obligación corporativa, el Sr. Eric Rossner fungía como presidente de la corporación Mansión del Sol Homeowners Association, Inc., registro 31007.

43. El 16 de julio de 2016 se incorporó bajo el número 377420 una nueva corporación denominada igual que la extinta corporación 31007, Mansión del Sol Homeowners Association, Inc.

44. La incorporación de esta nueva corporación, Mansión del Sol Homeowners Association, Inc., número 377420, no fue aprobada por asamblea general de los residentes de la urbanización Mansión del Sol. Ante esto no existen minutas, ni actas que reflejen que dicha asamblea se llevó a cabo.

45. Tras crearse esta nueva corporación, su junta de directores nunca discutió con los residentes de la urbanización la adopción de las condiciones restrictivas que operaban bajo la antigua corporación Mansión del Sol Homeowners Association. Ante esto, no existen minutas donde se recoja la discusión de este tema.

46. Dicha corporación a pesar de haberse creado en el 2016, al presente no ha adoptado ningún reglamento o Bylaws para regir sus procedimientos.

47. El 20 de marzo de 2021, la Junta de Directores de la urbanización Mansión del Sol, envió un memorando a todos los residentes de la urbanización, el cual leía en su párrafo 2:

Recientemente, se nos ha traído a nuestra atención, situaciones que afectan las buenas relaciones anteriormente expresadas. Las mismas no están acorde con los Estatutos Corporativos ("Bylaws") de la Asociación del 02 de febrero de 1998; ni en los compromisos contractuales y legales contraídos en el Contrato de Declaración de Convenios y Restricciones para Mansiones del Sol estipulados mediate la Escritura Número 366 del 17 de octubre de 1977. Por otro lado, estas actividades están contra de las mínimas nociones que deben existir para proteger esa sana convivencia, que hizo atractivo el deseo de adquirir una propiedad en esta urbanización. Si la residencia esta alquilada, es responsabilidad del propietario (a), que el inquilino conozca y cumpla con lo establecido en los Bylaws. Entre otras acciones que no deben ocurrir están: ….

Estacionar vehículos comerciales en las calles. Absolutamente prohibido.

48. Dicho memorando no hace mención alguna a alguna prohibición relacionada con el estacionamiento de los vehículos de motor comerciales dentro de los solares de los residentes.

49. Dos años más tarde, específicamente el 3 de febrero de 2023, la Junta de Directores envió otro memorando similar al previamente mencionado, el cual leía en su párrafo 2:

Recientemente, se nos ha traído a nuestra atención, situaciones que afectan las buenas relaciones anteriormente expresadas. Las mismas no están acorde con los Estatutos Corporativos ("Bylaws")

de la Asociación del 02 de febrero de 1998; ni en los compromisos contractuales y legales contraídos en el Contrato de Declaración de Convenios y Restricciones para Mansiones del Sol estipulados mediate la Escritura Número 366 del 17 de octubre de 1977 y/o leyes. Por otro lado, estas actividades están contra de las mínimas nociones que deben existir para proteger esa sana convivencia, que hizo atractivo el deseo de adquirir una propiedad en esta urbanización. Si la residencia esta alquilada, es responsabilidad del propietario (a), informar al inquilino para que conozca y cumpla con lo establecido en estos documentos. Entre otras acciones que no deben ocurrir están: ....

Estacionar o lavar vehículos comerciales en las calles. Absolutamente prohibido.

50. Dicho memorando no hace mención alguna a alguna prohibición relacionada con el estacionamiento de los vehículos de motor comerciales dentro de los solares de los residentes.

51. El 30 de junio de 2023, la parte demandada por primera vez en más de veintitrés años le notifica a los demandantes y a los residentes de la urbanización que no pueden continuar estacionando sus vehículos de motor comerciales dentro de sus propiedades.

52. El 10 de septiembre de 2023, la parte demandada, mediante carta, les notifica a los demandantes que de no remover los vehículos se estará presentando un interdicto permanente en su contra.

A base de las anteriores determinaciones de hecho, el Tribunal de Primera Instancia concluyó que la parte demandada-apelante toleró durante más de veinte (20) años el estacionamiento de los vehículos comerciales de la parte demandante-apelada dentro de su propiedad, por lo que no podía exigir posteriormente el cumplimiento de las restricciones voluntarias en cuanto a esa conducta. En particular, razonó que la prolongada inacción de la Asociación constituyó una renuncia a exigir el cumplimiento de dicha restricción y que resultaban de aplicación las doctrinas de abandono, incuria (*laches*) e impedimento por los propios actos (*estoppel*). Asimismo, determinó que no se demostró que la residencia fuera utilizada como centro de operaciones comerciales, por lo que concluyó que no existía controversia material de hecho que impidiera resolver el caso sumariamente. En consecuencia, declaró *Ha Lugar* la *Moción de Sentencia Sumaria* presentada por la parte demandante-apelada, *No Ha Lugar* la *Moción de Sentencia Sumaria* presentada por la parte demandada-apelante y desestimó la *Reconvención*. Al así disponer, el foro primario modificó las restricciones voluntarias para permitir a los

residentes de la Urbanización Mansión del Sol estacionar sus vehículos comerciales dentro de sus predios.

Inconforme, y tras denegada una previa solicitud de reconsideración, el 2 de diciembre de 2024, la parte apelante presentó el recurso de *Apelación* ante nos. Mediante este, señaló la comisión de los siguientes errores:

1. ERRÓ EL HONORABLE TPI AL CONCLUIR SUMARIAMENTE QUE LA ASOCIACIÓN DE TITULARES LE ES APLICABLE LA DEFENSA DE ABANDONO A CONDICIONES RESTRICTIVAS A PESAR DE QUE EN *SLG FERNANDEZ MARTÍNEZ V. RAD-MAN SAN JUAN III-D*, 208 D.P.R. 310 (2021) EL TRIBUNAL SUPREMO ESTABLECIÓ QUE DICHA DEFENSA ESTÁ ÍNTIMAMENTE LIGADA A LA EXISTENCIA DE CAMBIOS RADICALES EN EL VECINDARIO.
2. ERRÓ EL HONORABLE TPI AL NO DECLARAR QUE LOS DEMANDANTES SE ENCUENTRAN OPERANDO UN NEGOCIO DESDE LA RESIDENCIA EN VIOLACIÓN A LAS CONDICIONES RESTRICTIVAS QUE NO ESTABLECEN EXCEPCIÓN ALGUNA.
3. ERRÓ EL HONORABLE TPI AL DETERMINAR QUE LA SENTENCIA DECLARATORIA DICTADA LE ES DE APLICACIÓN A TODOS LOS TITULARES DE LA URBANIZACIÓN.

Por su parte, el 2 de enero de 2025, la parte apelada presentó su escrito en oposición. Así pues, perfeccionado el recurso y con el beneficio de la comparecencia de ambas partes, procedemos a exponer la normativa jurídica aplicable a las controversias ante nuestra consideración.

**-II-**

**A. Sentencia Sumaria**

Las Regla 36 de Procedimiento Civil de Puerto Rico, 32 LPRA Ap. V, R. 36, instituye el mecanismo de sentencia sumaria a nuestro ordenamiento jurídico. En particular, su función es permitir que cualquiera de las partes pueda mostrar, previo al juicio y luego del descubrimiento de prueba, que no existe una controversia material de hecho que deba ser dirimida en un juicio plenario; y que, por tanto, el tribunal está en posición de aquilatar esa evidencia para disponer del caso ante sí. 32 LPRA Ap. V,

R. 36.1-36.2; *Rodríguez Méndez v. Laser Eye,* 195 DPR 769, 784-785 (2016).

En ese sentido, la parte promovente de la solicitud debe demostrar la inexistencia de una controversia de hecho material por medio de una moción fundamentada, mientras que la parte promovida debe mostrar que existe controversia de algún hecho material sobre la totalidad o parte de la causa de acción. *Rodríguez Méndez v. Laser Eye,* supra, pág. 785. Además, la parte promovida no puede descansar en meras afirmaciones contenidas en sus alegaciones ni tomar una actitud pasiva, sino que está obligada a presentar evidencia que demuestre la existencia de controversia sustancial de hechos. *Íd.* Sin embargo, ninguna de las partes puede enmendar sus alegaciones a través de la presentación de una sentencia sumaria o su oposición. *León Torres v. Rivera Lebrón,* 204 DPR 20, 47 (2020).

Así pues, para que el tribunal pueda adjudicar en los méritos una controversia de forma sumaria, es necesario que, de las alegaciones, deposiciones, contestaciones a interrogatorios, admisiones, declaraciones juradas y cualquier otra evidencia ofrecida, surja que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, procede dictar sentencia sumaria a favor de la parte promovente. 32 LPRA Ap. V, R. 36.3(e).

En cuanto a los hechos esenciales y pertinentes, también conocidos como hechos materiales, son aquellos que pueden afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Oriental Bank v. Caballero García,* 212 DPR 671, 679 (2023). Por lo tanto, el tribunal solo podrá dictar sentencia sumaria en los casos en los cuales tenga ante su consideración todos los hechos materiales para resolver la controversia y surja claramente que la parte promovida por el recurso no prevalecerá. *Íd.*

Conviene destacar que el Tribunal Supremo ha dispuesto que, el foro apelativo se encuentra en igual posición que el Tribunal de Primera Instancia para evaluar la procedencia de una solicitud de sentencia

sumaria. *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010, 1025 (2020). *Meléndez González et al. v M. Cuebas*, 193 DPR 100, 115 (2015). Además, el Alto Foro estableció el estándar específico de revisión que debe utilizar el Tribunal de Apelaciones, a saber: (1) examinar de *novo* el expediente, de la manera más favorable a favor de la parte promovida, y aplicar las disposiciones de la Regla 36 de Procedimiento Civil, *supra*, como su jurisprudencia interpretativa; (2) revisar que la moción de sentencia sumaria y su oposición cumplan con los requisitos de forma codificada en la Regla 36.4 de Procedimiento Civil, *supra;* (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, exponer concretamente los hechos materiales controvertidos e incontrovertidos; y (4) de encontrar que los hechos materiales realmente son incontrovertidos, debe proceder a revisar de *novo* si el foro primario aplicó correctamente el derecho a la controversia. *Meléndez González et al. v M. Cuebas,* supra, págs. 117-119. Además, el foro apelativo en su revisión está limitado a lo siguiente:

> *[P]rimero*, sólo puede considerar los documentos que se presentaron ante el foro de primera instancia. Las partes no pueden añadir en apelación *exhibit*[s], deposiciones o affidávit[s] que no fueron presentados oportunamente en el foro de primera instancia, ni pueden esbozar teorías nuevas o esgrimir asuntos nuevos por primera vez ante el foro apelativo. *Segundo*, el tribunal apelativo sólo puede determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. No puede adjudicar los hechos materiales y esenciales en disputa. Esa tarea le corresponde al foro de primera instancia. *Íd.,* pág. 114-115.

## B. Restricciones Voluntarias

Las restricciones voluntarias sobre fincas se encuentran reguladas actualmente en los Artículos 813 al 819 del Código Civil de Puerto Rico de 2020, 31 LPRA secs. 8081-8087. No obstante, previo a la aprobación del referido Código Civil de 2020, *supra*, esta figura había sido reconocida y desarrollada jurisprudencialmente bajo la doctrina de las servidumbres en equidad, también conocidas como condiciones restrictivas. En términos generales, ambas figuras se refieren a limitaciones de carácter real sobre el uso, construcción, ornato o fines análogos de una finca, impuesta con el

propósito de ordenar el desarrollo de una propiedad y preservar determinados intereses comunes. 31 LPRA sec. 8081.

El Artículo 814 del Código Civil de 2020, 31 LPRA sec. 8082, dispone que para que estas restricciones sean válidas y eficaces contra todos, deben concurrir los siguientes requisitos: (a) que las limitaciones sean razonables; (b) que formen parte de un plan general de mejoras; (c) que sean compatibles con la política pública sobre uso de terrenos; (d) que consten de forma específica en el título de la propiedad; y (e) que estén inscritas en el Registro de la Propiedad. *Asoc. V. Villa Caparra v. Iglesia Católica,* 117 DPR 346, 352-353 (1986).

Una vez inscritas, estas restricciones adquieren naturaleza real y son oponibles *erga omnes. SLG Fernández-Bernal v. RAD-MAN et al.,* 208 DPR 310, 327 (2021); *Asoc. Vec. Urb. Huyke v. Bco. Santander,* 157 DPR 521, 535 (2002). *Asoc. V. Villa Caparra v. Iglesia Católica,* supra, pág. 353. Por ello, obligan no solo a quienes originalmente las constituyeron, sino también a los presentes y futuros adquirentes de la propiedad gravada. *Morales et al. v. Asoc. Propietarios,* 214 DPR 284, 293 (2024); *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, págs. 327-328; *Asoc. Vec. Urb. Huyke v. Bco. Santander,* supra, pág. 536. A esos efectos, el Registro de la Propiedad cumple una función notificadora, pues el conocimiento de las limitaciones inscritas se imputa a todo adquirente posterior. *Asoc. Vec. Urb. Huyke v. Bco. Santander,* supra, pág. 536. Así, quien adquiere una propiedad sujeta a condiciones restrictivas inscritas queda obligado por ellas, en tanto forma parte del estado jurídico de la propiedad adquirida. *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, págs. 328-329.

Ahora bien, por tratarse de limitaciones al derecho de propiedad, su alcance debe surgir de un lenguaje claro, específico y libre de ambigüedades. *Asoc. Vec. Urb. Huyke v. Bco. Santander,* supra, págs. 538-539. La restricción debe ofrecer un aviso suficiente para que cualquier persona pueda conocer, antes de adquirir la propiedad, qué usos están permitidos y cuáles están prohibidos. *Íd.,* pág. 539. Por ello, el principio

rector para interpretar estas condiciones es identificar la voluntad real de las partes al momento de establecerlas. *Residentes Parkville v. Díaz*, 159 DPR 374, 382-383 (2003).

Reconocida la validez y vigencia de una condición restrictiva, los tribunales deben hacer cumplir los propósitos del acuerdo al cual las partes aceptaron someterse al adquirir la propiedad gravada. *Íd.*, pág. 385. Ello responde a la naturaleza contractual-real de estas limitaciones y al principio de autonomía de la voluntad. No obstante, su aplicación no puede ser contraria a la ley, la moral o el orden público.

El ordenamiento reconoce, además, remedios para hacer valer estas restricciones. En particular, quien interese impedir o detener la violación de una condición restrictiva puede acudir al mecanismo del *injunction*. *Asoc. Vec. Urb. Huyke v. Bco. Santander*, supra, págs. 537. Para ello, basta con probar la violación de la servidumbre, sin necesidad de demostrar daños reales o perjuicios sustanciales. *Íd.*

Sin embargo, contra dicho recurso, la parte demandada puede oponer todas las defensas que le otorgan los principios en equidad, a saber: 1) *consentimiento*, defensa que procede invocarla cuando el demandante ha permitido que otras personas violen las restricciones, siempre que esas violaciones sean de carácter sustancial y permanente (*acquiescence*); 2) *consciencia impura*, procede cuando el demandante que pretende poner en vigor una condición la ha violado de forma reiterada (*unclean hands*); 3) *incuria*, aplica cuando el demandante incurre en falta de diligencia y tardíamente pretende poner en vigor la restricción en un momento en que la parte demandada ya ha actuado de forma tal que resultaría inútil y hasta opresivo para esta hacerla cumplir con la condición (*laches*), y 4) *impedimento*, cuando el demandante —al instar el recurso— actúa en una forma que resulta ser incompatible con sus actos y conductas anteriores (*estoppel*). *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, págs. 328 esc. 9. Del mismo modo, se puede plantear que la servidumbre se ha

extinguido o modificado, siempre que demuestre alguna de las circunstancias o causas reconocidas en nuestro ordenamiento para ello. *Residentes Parkville v. Díaz*, supra, pág. 383.

A tenor, el Artículo 818 del Código Civil de 2020, 31 LPRA sec. 8086, recoge expresamente las causas por las cuales las restricciones voluntarias o servidumbres en equidad pueden modificarse o extinguirse. En particular, dispone lo siguiente:

> Las restricciones voluntarias de la propiedad pueden modificarse o extinguirse:
>
> (a) en la forma y por las causas dispuestas en el acto jurídico que las establece;
> (b) por acuerdo unánime de los interesados, ya sea mediante la eliminación total o parcial de las restricciones o mediante la constitución de nuevas restricciones que alteran las anteriores;
> (c) por efecto del tiempo o por realizarse la condición, si así se constituyeron;
> (d) por renuncia o abandono de los propietarios que reciben los beneficios de las restricciones mediante conducta que demuestre una intención de renunciar a ellos o abandonarlos;
> (e) por expropiación forzosa, si las restricciones son incompatibles con el uso público de la finca expropiada; y;
> (f) por cambios radicales del vecindario.

En cuanto a la causal de **renuncia o abandono**, resulta importante destacar que la mera inacción prolongada no necesariamente extingue una restricción voluntaria o servidumbre en equidad. Conforme a la jurisprudencia, dicha causal exige una conducta que demuestre una intención concluyente de renunciar o abandonar las condiciones restrictivas. *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 330 (2021) Véase, M. E. García Cárdenas, *Derecho de Urbanizaciones: servidumbres en equidad, controles de acceso e instalaciones vecinales,* San Juan, Ed. InterJuris, 2010, pág. 55. Asimismo, ha descrito esta causal como una actitud de dejadez ante el incumplimiento de otros titulares. *SLG Fernández-Bernal v. RAD-MAN et al.*, supra, pág. 330.

El Tribunal Supremo también ha reconocido que la causal de abandono o renuncia está estrechamente vinculada con la causal de cambios radicales del vecindario. *Íd.* Esta última se refiere a cambios que

convirtieron la restricción en una carga irrazonable y opresiva para el dueño del predio sirviente; destruyeron el valor que la restricción tenía para los dueños de los predios dominantes; y frustraron completa y permanentemente el propósito que perseguía la servidumbre. *Íd.,* a la pág. 331*; Asoc. Vec. Urb. Huyke v. Bco. Santander*, supra, pág. 542.Al evaluar este planteamiento, los tribunales deben considerar tanto los cambios ocurridos dentro del área restringida como las alteraciones en los terrenos circundantes, sin que baste demostrar cambios parciales o aislados. *Asoc. Vec. Urb. Huyke v. Bco. Santander*, supra, págs. 543-544.

En esa misma línea, la jurisprudencia ha establecido que para determinar si los cambios acaecidos tuvieron efecto suficiente sobre la servidumbre en equidad, se evaluarán los siguientes factores: (1) el tamaño del área sujeta a las restricciones; (2) la localización de los cambios ocurridos con respecto el área restringida; (3) el tipo de cambio ocurrido; (4) los cambios en la infraestructura, con particular referencia a los patrones de tránsito; (5) la extensión y naturaleza de los usos comerciales e industriales en las áreas circundantes; (6) el valor de los terrenos residenciales en comparación con los comerciales; (7) el término y duración de las restricciones: (8) si las restricciones continúan siendo beneficiosas o no para los dueños de los solares afectados; y (9) el cambio ocurrido en la zonificación del área y sus alrededores. *SLG Fernández-Bernal v. RAD-MAN et al.*, supra, pág. 333. Véase, además, *Asoc. Vec. Urb. Huyke v. Bco. Santander*, supra, págs. 543-544; M.J. Godreau y A.I. García Saúl, *Servidumbres y conservación,* 67 (Núm. 2) Rev. Jur. UPR 249, 304-305 (1998).

A su vez, el Artículo 819 del Código Civil de 2020, 31 LPRA sec. 8087, reconoce el mecanismo judicial disponible para hacer valer las causas de modificación o extinción antes mencionadas. En particular, dispone que el propietario o titular de un derecho real sobre una finca gravada puede acudir al tribunal competente para solicitar la modificación o extinción de

la restricción voluntaria. Por tanto, mientras una restricción no haya sido válidamente modificada o extinguida conforme a derecho, conserva su eficacia real y resulta exigible contra los titulares presentes y futuros de la propiedad gravada. *Íd.*

-III-

En su recurso, mediante el primer señalamiento de error, la parte apelante sostuvo que el Foro Primario erró al concluir sumariamente que le era aplicable la defensa de abandono a las condiciones restrictivas, toda vez que el Tribunal Supremo estableció en *SLG Fernández Martínez v. RAD-MAN San Juan III-D*, supra, que dicha causal está íntimamente ligada a la existencia de cambios radicales en el vecindario. Mediante el segundo señalamiento, arguyó que el TPI erró al no declarar que los demandantes operaban un negocio desde su residencia en violación a las restricciones voluntarias. Por último, mediante el tercer señalamiento, planteó que el Foro Primario erró al determinar que la sentencia declaratoria dictada le era de aplicación a todos los titulares de la urbanización. Por su parte, la parte apelada sostuvo en oposición que los hechos incontrovertidos del expediente justificaban plenamente el resultado emitido por el Tribunal de Primera Instancia, que no existía actividad comercial alguna desarrollada desde la residencia, y que la Asociación estaba impedida de exigir las restricciones en virtud de su prolongada inacción.

Previo a atender los señalamientos en sus méritos, debemos determinar si las mociones de sentencia sumaria presentadas por ambas partes, así como sus respectivas oposiciones, cumplieron con los requisitos de forma que exigen nuestras reglas procesales. Realizado dicho examen, concluimos que ambas partes dieron cumplimiento a las exigencias formales de la Regla 36 de Procedimiento Civil, *supra*. La parte demandante-apelada incluyó en su moción una relación enumerada de los hechos esenciales sobre los cuales alegó que no existía controversia sustancial, acompañada de la evidencia documental correspondiente. La

parte demandada-apelante hizo lo propio en su moción, identificando los hechos materiales que, a su juicio, respaldaban su posición y sometiendo la prueba documental en apoyo. A su vez, ambas partes presentaron oposiciones que respondieron a los hechos propuestos por la contraparte, conforme lo exigen nuestras reglas.

Cumplida nuestra función revisora y examinado el expediente en su totalidad, concluimos que no existen controversias de hechos materiales que impidan la resolución sumaria de la controversia. En vista de ello, nos corresponde revisar *de novo* si el Foro Primario aplicó correctamente el derecho a los hechos incontrovertidos. Los tres errores señalados guardan estrecha relación entre sí, por lo que los discutiremos de forma conjunta.

Como hemos esbozado en la normativa jurídica aplicable, las restricciones voluntarias inscritas en el Registro de la Propiedad adquieren naturaleza real y resultan oponibles *erga omnes*. No obstante, el propio ordenamiento jurídico reconoce causas mediante las cuales estas pueden modificarse o extinguirse, entre ellas la renuncia o abandono, así como las defensas en equidad disponibles frente a quien pretende hacerlas valer. La distinción entre ambas figuras resulta determinante en el caso de epígrafe.

En cuanto a la causal de abandono como causa de extinción, el Tribunal Supremo fue claro en *SLG Fernández-Bernal v. RAD-MAN et al.*, supra, al establecer que esta causal está estrechamente vinculada a la existencia de cambios radicales en el vecindario; esto es, cambios que convirtieron la restricción en una carga irrazonable y opresiva, que destruyeron el valor que esta tenía para los predios dominantes y que frustraron completa y permanentemente su propósito. Examinado el expediente, no surge evidencia de que se hayan producido cambios radicales de esa naturaleza en la Urbanización Mansión del Sol. La urbanización mantiene su carácter residencial, no obra en el expediente prueba de transformaciones sustanciales en la zonificación del área ni de usos incompatibles generalizados que hubieran desnaturalizado el

propósito de las restricciones. En ese sentido, le asiste razón a la parte apelante en cuanto a que el Foro Primario no debió anclar su determinación en la causal de abandono. Sin embargo, ello no implica que el resultado alcanzado por el Tribunal de Primera Instancia sea incorrecto, pues los mismos hechos incontrovertidos del expediente sostienen la aplicación de las defensas en equidad de incuria (*laches*) e impedimento por los propios actos (*estoppel*), las cuales no requieren la concurrencia de cambios radicales en el vecindario para prosperar.

Conforme hemos expuesto, la defensa de incuria aplica cuando el demandante incurre en falta de diligencia y tardíamente pretende poner en vigor la restricción en un momento en que la parte demandada ya ha actuado de tal forma que resultaría inútil y hasta opresivo para esta cumplir con la condición. La defensa de impedimento, por su parte, opera cuando quien insta el recurso actúa de forma incompatible con su conducta anterior. Ambas defensas encuentran sustento sólido en los hechos incontrovertidos del expediente. Veamos.

Surge del expediente que los demandantes-apelados adquirieron su propiedad en el año 2000 y que, desde ese momento, estacionaron los vehículos comerciales tipo *step-van* dentro de su solar, construyendo incluso un *driveway* con ese propósito. Este hecho fue del conocimiento pleno y continuo de la Asociación desde sus inicios, toda vez que el señor Eric Rossner, quien residía a cuatro casas de los demandantes y fungió como presidente y miembro de la Junta de Directores desde el año 2003, siempre tuvo conocimiento de la existencia de los vehículos y de su estacionamiento dentro de la propiedad. A pesar de ello, la Asociación no realizó gestión alguna para exigir el cumplimiento de la restricción durante más de veintitrés años. En particular, surge que la propia Asociación admitió que desde marzo del año 2000 hasta junio de 2023 permitió que los demandantes mantuvieran dichos vehículos estacionados dentro de su propiedad, que nunca les prohibió hacerlo, que nunca les exigió removerlos y que nunca les notificó por escrito ni verbalmente que dicha conducta

violaba las restricciones voluntarias. Asimismo, los memorandos circulados por la Junta de Directores en los años 2021 y 2023 únicamente prohibían el estacionamiento de vehículos comerciales en las calles de la urbanización, sin hacer mención alguna al estacionamiento dentro de los solares de los residentes, lo que refuerza la incompatibilidad entre la conducta anterior de la Asociación y la exigencia que tardíamente pretendió imponer.

A la luz de este cuadro fáctico, concluimos que la Asociación incurrió en una falta de diligencia prolongada y sostenida que, combinada con una conducta afirmativa incompatible con la restricción que pretendía hacer valer, activa las defensas de incuria y *estoppel* en favor de los demandantes-apelados. Estos actuaron de buena fe durante más de dos décadas, llegando incluso a estructurar sus operaciones comerciales sobre la base de poder estacionar los vehículos en su propiedad, circunstancia que fue determinante para la propia adquisición del inmueble. Exigirles ahora el cumplimiento de la restricción resultaría inútil y opresivo, precisamente el escenario que las defensas en equidad están diseñadas a evitar. Por tanto, aunque el Foro Primario erró al caracterizar la situación como una de abandono, el resultado al que llegó es correcto en derecho por aplicación de las defensas en equidad de incuria e impedimento. El primer error no se cometió en cuanto al resultado, pero se modifica el fundamento jurídico que lo sostiene.

En cuanto al segundo error, la parte apelante sostuvo que la parte apelada operaba un negocio desde su residencia en violación a las condiciones restrictivas. Sin embargo, los hechos incontrovertidos del expediente desmienten esa conclusión. Quedó establecido que toda gestión comercial relacionada con la franquicia "*Snap-on Tools*" se lleva a cabo de manera ambulante, que en la propiedad no se recibe, carga ni descarga mercancía alguna relacionada con el negocio, y que la residencia no se utiliza como centro de operaciones. El hecho de que la dirección de la

residencia figure en el Registro de Comerciante, en el Permiso Único o en los documentos corporativos de Tools Mec Sales, LLC no transforma la propiedad en un centro de actividad comercial, pues dichos registros responden a exigencias administrativas que no implican, por sí solos, que se desarrolle actividad comercial alguna desde el inmueble. La restricción, por su propio lenguaje, prohíbe utilizar la unidad para propósitos comerciales; no prohíbe que un residente que opera un negocio ambulante utilice su residencia como dirección postal o administrativa. El segundo error no se cometió.

Finalmente, en cuanto al tercer error, le asiste razón a la parte apelante. La sentencia declaratoria dictada por el Foro Primario solo puede tener efecto entre las partes del litigio. Una determinación de que las restricciones voluntarias no son exigibles contra la parte apelada, por razón de las defensas en equidad que les asisten de manera particular, no puede extenderse a todos los titulares de la urbanización ni puede interpretarse como una declaración de inaplicabilidad general de las condiciones restrictivas. Las defensas de incuria y *estoppel* son de naturaleza personal y se configuran a partir de la relación específica entre las partes y la conducta particular que medió entre ellas. Por tanto, el alcance de la sentencia declaratoria debe limitarse a la parte demandante-apelada y a su propiedad ubicada en la calle Vía Arcoíris MS49 de la Urbanización Mansión del Sol. El tercer error se cometió.

**-IV-**

Por los fundamentos expuestos previamente, los cuales se hacen formar parte de esta Sentencia, **se modifica** la *Sentencia Sumaria* recurrida para limitar el alcance de la sentencia declaratoria exclusivamente a los demandantes-apelados y su propiedad. Así modificada, se **confirma** el dictamen apelado.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones. La Jueza Álvarez Esnard disiente con la siguiente expresión:

Disiento de la determinación emitida por la mayoría de este Panel en cuanto a que procede disponer de la presente controversia mediante Sentencia Sumaria. Según ha dispuesto nuestro Tribunal Supremo en el caso *SLG Férnández-Bernal v. RAD-MAN et al*, 208 DPR 310, 330 (2021), la causal de renuncia o abandono no necesariamente extingue una restricción voluntaria o servidumbre en equidad, exige una conducta que demuestre **intención**. Por tanto, el foro a *quo* debió celebrar juicio para dilucidar el elemento intencional o de subjetividad que, a mi juicio, permanece en controversia en el presente caso.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones